IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

ROBIN R. OLSON,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C11-2028

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    Olson's Educational Background and Employment Background . . . . 5
    B.    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . 5
        1.    Olson's Testimony . . . . . . . . . . . . . . . . . . . . . . . 5
        2.    Vocational Expert's Testimony . . . . . . . . . . . . . . . . 6
    C.    Olson's Medical History . . . . . . . . . . . . . . . . . . . . . . . 6

V.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . 8
    B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . 10
        1.    Dr. Doumanian's Opinions . . . . . . . . . . . . . . . . . . 10
        2.    Hypothetical Question . . . . . . . . . . . . . . . . . . . . 13
        3.    Credibility Determination . . . . . . . . . . . . . . . . . . 14

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Robin Ruth Olson on June 28, 2011, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title XVI supplemental security income ("SSI") benefits and Title II disability insurance benefits. Olson asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits and disability insurance benefits. In the alternative, Olson requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On February 19, 2008, Olson applied for SSI benefits and disability insurance benefits. In her applications, Olson alleged an inability to work since January 28, 2008 due to bipolar disorder and depression. Olson's applications were denied on May 2, 2008. On August 20, 2008, her applications were denied on reconsideration. On October 9, 2008, Olson requested an administrative hearing before an Administrative Law Judge ("ALJ"). On November 20, 2009, Olson appeared in person with her attorney Hugh Field before ALJ Thomas M. Donahue for an administrative hearing. Olson and vocational expert Carma Mitchell testified at the hearing. In a decision dated March 24, 2010, the ALJ denied Olson's claim. The ALJ determined that Olson was not disabled and not entitled to SSI benefits or disability insurance benefits because she was functionally capable of performing her past work as well as other work that exists in significant numbers in the national economy. Olson appealed the ALJ's decision. On May 13, 2011 the Appeals Council denied Olson's request for review. Consequently, the ALJ's March 24, 2010 decision was adopted as the Commissioner's final decision.

On June 28, 2011, Olson filed this action for judicial review. The Commissioner filed an Answer on August 29, 2011. On September 28, 2011, Olson filed a brief arguing that there is not substantial evidence to support the ALJ's finding that she is not disabled and that she could perform other work that exists in significant numbers in the national economy. On November 28, 2011, the Commissioner filed a responsive brief arguing that

the ALJ's decision was correct and asking the court to affirm the ALJ's decision. On December 7, 2011, Olson filed a reply brief. On August 1, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010);

3

*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Olson's Educational Background and Employment Background

Olson was born in 1961. She is a high school graduate. She later attended three years of college but did not graduate. At the administrative hearing, Olson told the ALJ she quit college because of depression and lack of focus and concentration.

The record contains a detailed earnings report for Olson, covering her employment history from 1977 to 2008. Her thirty-year earning history features two higher earning stretches, 1987 to 1989 and 1996 to 2001, where Olson repeatedly earned yearly amounts in the mid-teens to low-twenty thousand range. She earned her highest amount, over $23,000, in 1999. For virtually the rest of her career, Olson averaged between $4,000 and $10,000 in annual earnings. In each of her two most recent reported years, 2007 and 2008, Olson earned over $7,000.

### B. Administrative Hearing Testimony

#### 1. Olson's Testimony

At the administrative hearing, the ALJ asked Olson why she believed she was unable to work full-time. Olson first listed several factors: "Exhaustion, fatigue, side effects from my medication, depression."[1] Olson later explained, "I'm kind of incapable of functioning in that I don't have the ability. My behavior is extremely unpredictable. . . . I'm intolerant of others. I've had inappropriate behavior. . . . [I've] [b]een loud, disrespectful, obnoxious, talking over others."[2] Olson also cited difficulties sleeping and concentrating as well as "remembering when to go to work [and] [h]ow to get back and forth from places."[3]

---

[1] Administrative Record at 14.

[2] Administrative Record at 15.

[3] Id.

5

## 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who is "age 47, female. . . . No exertional limitations. Would need a lower stress level such as a level four with ten being the most stressful."[4] The vocational expert testified that under such limitations, Olson could perform all of her past relevant work. The vocation expert further testified that Olson could perform the following work: (1) information clerk (1,000 positions in Iowa and 105,000 in the nation), (2) compiler (200 positions in Iowa and 24,000 positions in the nation), (3) checker II (195 positions in Iowa and 14,100 positions in the nation), and (4) order clerk (1,020 positions in Iowa and 84,200 positions in the nation).

### C. *Olson's Medical History*

Olson's medical records prior to 2007 are scarce in the record. She later told a physician that she had a history of bipolar disorder and suicidal thoughts dating back to 1994. (Administrative Record at 310). However, notes taken during this same visit indicate Olson was unable to give reliable medical, social, or family histories. *See* Administrative Record at 313.

Beginning in April 2007, Olson began semi-regular visits to Dr. Valentina Doumanian, a psychiatrist in Cedar Falls, Iowa. The record includes treatment notes from 12 such visits. The record indicates Olson's appointment in November 2007 was her first "for at least several months." She reported running out of medications as well as experiencing several mini-manic episodes. During 2007, Dr. Doumanian prescribed and adjusted several medications – Clonazepam, Trazodone, Lumictal, Lithium – in response to Olson's varying symptoms – depression, sleeplessness, anxiety, racing thoughts, manic episodes. At each visit, Dr. Doumanian recorded discussions involving the stressors in Olson's personal life, specifically, her separation and divorce from her husband in 2007 and the consequent financial and living difficulties.

---

[4] Administrative Record at 22.

In January 2008, Olson reported to Dr. Doumanian "feel[ing] horrible." She had been fired from her job the previous day after being rude to a customer. Olson also reported feeling manicky the past couple of weeks, and felt the onset of depression. In response, Dr. Doumanian prescribed Seroquel. Though she declined Dr. Doumanian's suggestions to go to the hospital, three days later she voluntarily admitted herself into the psychiatric unit of the Covenant Medical Center in Cedar Falls after having "suicidal ideations." Physicians there noted that Olson exhibited abnormal speech, abnormal thought processes, flight of ideas, poor recent memory and "a rather brief attention span." She was treated by Dr. Sunita Kantamneni who adjusted Olson's medications and also prescribed Seroquel. Olson was released into her sister's custody after four days. In follow-up visits to Dr. Doumanian, Olson discussed her everyday emotional and financial difficulties, but reported "doing a little better."

In May 2008, Olson underwent a Mental Residual Functional Capacity Assessment by Dr. Scott Schafer. *See* Administrative Record at 347-350. In evaluating Olson's ability to sustain twenty individual mental activities, Dr. Schafer concluded that Olson was only 'moderately limited' in five activities: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods of time; (4) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (5) the ability to respond appropriately to changes in the work setting. Dr. Schafer indicated that Olson was not significantly limited with respect to the other 15 mental activities. To support this conclusion, he highlighted Olson's ability to function independently, maintain part-time employment, interact appropriately with others at a superficial level, and perform adequately at tasks not requiring sustained attention.

In the months following Dr. Schafer's assessment, Dr. Doumanian's notes indicate Olson cycled between "doing a little better" or "fairly stable" and "not doing much better" or "flat mood." Dr. Doumanian sometimes adjusted her medication, which at times

7

variously included Seroquel, Lithium, Lamictal, Klonopin, and/or Clonazepam. Again, at each visit, Olson discussed external stressors, specifically, struggles to secure housing after an eviction as well as continuing financial hardships.

In November 2009, Dr. Doumanian completed Mental Impairment Interrogatories for Olson. *See* Administrative Record at 418-423. In assessing the same 20 mental activities as Dr. Schafer had assessed 18 months earlier, Dr. Doumanian concluded that Olson was extremely limited (defined as "not able to perform designated task or function on regular, reliable, and sustained schedule) in one area of work functioning: maintaining attention and concentration for extended periods of time. Dr. Doumanian also found Olson 'markedly limited' (defined as "able to perform task or function, but has noticeable difficulty more than 20 percent of work day or work week") in thirteen other mental activities. Olson's ability with respect to the remaining six activities was evaluated as 'moderately limited.'

Elsewhere in the Mental Impairment Interrogatories, Dr. Doumanian characterized Olson's prognosis as "fair" and that she partially responded to treatment. Dr. Doumanian anticipated that Olson's impairments would cause her to miss, on average, three days of work per month. Finally, she opined that Olson suffers (1) a marked restriction in her activities of daily living; (2) marked difficulties in maintaining social functioning; (3) frequent deficiencies in concentration, persistence or pace resulting in a failure to complete tasks in a timely manner; and (4) three or more episodes per month of deterioration or decompensation in work or work-like settings.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Olson is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010);

*Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v.*

*Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Olson had not engaged in substantial gainful activity since January 28, 2008. At the second step, the ALJ concluded from the medical evidence that Olson had the following severe impairment: bipolar disorder. At the third step, the ALJ found that Olson did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Olson's RFC as follows:

> [Olson] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to a low stress level job, such as a level four, with ten being the most stressful.

(Administrative Record at 41.) Also at the fourth step, the ALJ determined that Olson could perform her past relevant work as an administrative assistant, a cashier checker, and a deli slicer. At the fifth step, the ALJ further determined that based on her age, education, previous work experience, and RFC, Olson could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Olson was not disabled.

### B. Objections Raised By Claimant

Olson argues that the ALJ erred in three respects. First, Olson argues that the ALJ failed to properly consider the opinions of her treating doctor, Dr. Doumanian. Second, Olson argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing. Lastly, Olson argues that the ALJ failed to properly evaluate her subjective allegations of disability.

#### 1. Dr. Doumanian's Opinions

Olson argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Doumanian. Specifically, Olson argues that the ALJ's reasons for discounting Dr. Doumanian's opinions are not supported by substantial evidence on the

record. Olson concludes that if Dr. Doumanian's opinions were properly evaluated and weighed by the ALJ, then she would have been found to be disabled.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ addressed the opinions of Dr. Doumanian:

> Valentina Doumanian, M.D., Psychiatrist filled out mental interrogatories in November 2009. Dr. Doumanian opined that the claimant had marked limitations in activities of daily living, marked difficulties in maintaining social functioning, and would have frequent deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner. In addition, Dr. Doumanian opined that she would have repeated episodes of deterioration or decompensation in work or work-like settings. (Exhibit 18F). She would be expected to miss more than three days of work per month. The undersigned has given little weight to the opinions expressed in the mental interrogatories completed by Dr. Doumanian. Dr. Doumanian indicated marked and extreme limitations that are more severe than the objective record as whole would indicate. Dr. Doumanian's responses in November 2009 are not consistent with his [sic] treating notes. The claimant's symptoms were controlled when appropriate medication was taken consistently. Although she experienced periodic exacerbation of her symptoms, medication adjustment and treatment stabilized her condition. Dr. Doumanian noted the claimant at least partially responded to medication and assessed her prognosis as "fair." Overall, although the record does illustrate some symptoms and restrictions related to the claimant's bipolar disorder, the evidence is simply not consistent with the severity of restrictions set forth by Dr. Doumanian at Exhibit 18F.

(Administrative Record at 43).

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Doumanian. In concluding that Dr. Doumanian's opinion in the mental interrogatories merits "little weight," the ALJ noted its inconsistency with Dr. Doumanian's own treatment notes. The ALJ cited several instances where Olson's condition stabilized in light of medication adjustments. The ALJ also implied that the disabilities and disabling symptoms listed in the mental interrogatories are infrequently mentioned in Dr. Doumanian's notes. The Court determines that taken together, these observations constitute "good reasons" for the ALJ's decision to grant the treating physician's opinion little weight. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Hypothetical Question*

Olson next argues that the ALJ's hypothetical question to the vocation expert failed to accurately describe her impairments. Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Olson's testimony in determining

Olson's impairments.[5] The fact that every visit to Dr. Doumanian involved a discussion of Olson's personal hardships makes her sensitivity to stress evident. Meanwhile, her alleged deficiencies in concentration, persistence, and pace are not evident, as indicated by their isolated mentions in the treatment notes and by her medications' effectiveness. The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (holding that an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was not insufficient.

### 3. *Credibility Determination*

Olson argues that the ALJ failed to properly evaluate her subjective allegations about the intensity, persistence, and limiting effects of her symptoms. Olson maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Olson's testimony, articulated the inconsistencies between her allegations and the record, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to

---

[5] Administrative Record at 42-44.

consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's

subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In reviewing the opinion evidence of the record, the ALJ noted that:

> The claimant has received health treatment for bipolar affective disorder. The claimant was treated with medication. The claimant stopped taking her medication from May 2007 until November 2007, and symptoms of depression, anxiety, and irritability returned. The claimant voluntarily admitted herself to the hospital in February 2008 for suicidal ideation about a week after being fired from her job. The claimant's medication was adjusted, her mood stabilized, and she was discharged three days later. (Exhibit 4F). The claimant's treating psychiatrist emphasized the importance of taking her medication as prescribed. The evidence consistently demonstrated that claimant's symptoms were stable when she followed treatment recommendations, specifically, when she took her medication as prescribed. The claimant reported feeling better in June 2008, and was looking for work while performing one day job. (Exhibit 8F, 4). In July 2008, the claimant reported feeling overwhelmed due to environmental factors such as getting evicted and a difficult financial situation. Nevertheless, the claimant denied any manic symptomatology and reported she remained very depressed for no longer than a day or two. In fact, the claimant stated she liked her medication and had been stable on Seroquel and Lithium. (Exhibit 8F, 3). In December 2008, the claimant noted increased depression, again due to financial difficulties. The claimant did not report any manic-like symptoms. She was working one job and was trying to work a second job. The claimant stated she was doing fine for the most part in August 2009. She reported she was working. (Exhibit 17F).

(Administrative Record at 43). From this recitation of the record, the ALJ evaluated Olson's credibility and concluded that the lack of supportive medical evidence and periods of noncompliance did not support the severity of symptoms that she alleges. Specifically, Olson's complaints were not consistent with Dr. Doumanian's treatment notes or other medical evidence in the record. Thus, the ALJ indicated that the lack of objective medical evidence does not support Olson's alleged mental health difficulties, *e.g.*, poor

concentration and memory. Together, the ALJ's discussion of Olson's credibility adequately addresses the *Polaski* factors applicable to Olson.

In conclusion, it is clear from the ALJ's decision that he thoroughly considered and discussed Olson's treatment history, medical history, functional restrictions, and the effectiveness of her medications in making a credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Olson's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 ("[A]n ALJ is not required to explicitly discuss each *Polaski* factor. . . . [I]t is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints."); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Olson's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Doumanian. The ALJ's hypothetical question to the vocational expert properly included the impairments which were substantially supported by the record as a whole. Lastly, the ALJ properly determined Olson's credibility with regard to her subjective complaints of disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 14th day of May, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA